# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Shamlodhiya*, 2013 IL App (2d) 120065

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ASHWANI K. SHAMLODHIYA, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0065 |
| Filed<br>Rehearing denied | February 26, 2013<br>April 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition was upheld over his contentions that his trial counsel failed to disclose that his closing argument would not seek a conviction on the lesser offense of involuntary manslaughter and that counsel's closing argument amounted to the functional withdrawal of the instruction on involuntary manslaughter, since those issues were matters of trial strategy left to counsel and were not cognizable under the Post-Conviction Hearing Act. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 01-CF-2665; the Hon. George J. Bakalis, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Peter A. Carusona and Thomas A. Karalis, both of State Appellate Defender's Office, of Ottawa, for appellant. |
| | |
| | Robert B. Berlin, State's Attorney, of Wheaton (Lawrence M. Bauer and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HUDSON delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice McLaren concurred in the judgment and opinion. |

**OPINION**

¶ 1                    I. INTRODUCTION

¶ 2    Following a jury trial in the circuit court of Du Page County, defendant, Ashwani K. Shamlodhiya, was convicted of first-degree murder and residential arson. Defendant filed a postconviction petition, raising a number of issues. See 725 ILCS 5/122-1 *et seq.* (West 2008). The trial court summarily dismissed the petition, and this court reversed (*People v. Shamlodhiya*, No. 2-08-0449 (2007) (unpublished order under Supreme Court Rule 23)). Following remand, the trial court dismissed a number of defendant's claims following second-stage postconviction proceedings. See *People v. Tate*, 2012 IL 112214, ¶ 10. One claim proceeded to the third stage (see *id.*), after which the trial court denied defendant's petition. Defendant now appeals, raising two issues. First, he contends that his attorneys' failure to disclose to him that they would not argue for the lesser included offense of involuntary manslaughter rendered him incapable of making a knowing decision regarding whether to seek a second-degree murder conviction in a bench trial (the trial judge believed second-degree murder would be an appropriate result). Second, he argues that during closing argument his attorney, without consulting him, effectively abandoned his request that the jury consider involuntary manslaughter. For the reasons that follow, we affirm.

¶ 3                    II. BACKGROUND

¶ 4    The full factual background of this case is set forth in an earlier order (*People v. Shamlodhiya*, No. 2-05-0200 (2007) (unpublished order under Supreme Rule 23)), and we will not restate it here. Instead, as the issues defendant raises are somewhat narrow, we will set forth only those facts necessary to resolve these issues. Both issues pertain to trial counsel's closing argument.

¶ 5     In 2004, defendant was tried on several counts of residential arson and murder. He was found guilty of arson, but the jury could not arrive at a verdict on the various murder counts. The trial court declared a mistrial. The parties contemplated a bench trial on stipulated evidence. Subsequently, defendant was retried before another jury. During the instruction conference of the second trial, defense counsel requested the trial court to instruct the jury on involuntary manslaughter. Defendant participated in this decision. Defendant responded affirmatively when the trial court asked whether he wished to decline an instruction on second-degree murder. The trial court abided by defendant's wishes, giving the former instruction but not the latter.

¶ 6     During closing argument, defense counsel addressed involuntary manslaughter as follows:

> "[The j]udge will give you the choice of looking at involuntary manslaughter and deciding whether or not that is the charge that [defendant] is truly guilty of.
>
> I consider that a compromised verdict. This has been a trial of self defense. We started with self defense and we are ending with self defense, because that is the truth; and every piece of physical evidence from the hinges on the door to the money in the gas tank, the rice cooker to the fact that the cooker was plugged in supports [defendant's] version of what occurred; and that is self defense.
>
> Now, the State may try to argue to you yet, but the evidence still supports involuntary manslaughter. They may argue, why don't you compromise? We are not asking you that. It's a case of self defense.
>
> I don't want a compromised verdict, and I don't want first degree murder, because the State can't prove it."

Defendant now contends that this argument amounted to an abandonment of his request that the jury consider the lesser included offense of involuntary manslaughter. He also contends that, had he known the details of this argument, he would have requested the trial court to conduct a bench trial on stipulated evidence and sought a conviction of second-degree murder.

¶ 7     During postconviction proceedings, Robert Miller, one of defendant's trial attorneys, testified that he spoke with defendant about whether to ask the trial court to instruct the jury on involuntary manslaughter. They, along with another attorney who was present (Thomas Ost), discussed the issue, and defendant decided to ask the trial judge to give that instruction. Miller further testified that it was not his intention to abandon the involuntary-manslaughter option during closing argument. If that had been his intent, he would have asked the trial judge to refrain from giving the instruction. Rather, his main goal was to seek a not-guilty verdict based on a self-defense theory. Miller characterized his decision as strategy. Miller believed that arguing for involuntary manslaughter would undermine the credibility of his attempt to secure a not-guilty verdict. Therefore, he tried to imply to the jury that it was the judge who had decided to tender the involuntary-manslaughter instruction. On cross-examination, Miller acknowledged that he told the jury that he did not want a compromised verdict (referring to involuntary manslaughter). Miller further acknowledged that he did not argue or attempt to show how the facts could support involuntary manslaughter. Furthermore,

Miller did not discuss the details of his closing argument with defendant, including that he intended to refer to involuntary manslaughter as a "compromised verdict" and that he would not be arguing that the facts supported involuntary manslaughter. During redirect examination, Miller stated that he "felt to argue the involuntary manslaughter would have taken away everything I was arguing with regard to the self-defense." In response to a question from the trial judge, Miller stated that he sought to give the jury the impression that the involuntary-manslaughter instruction came from the trial judge, because when jurors are attempting to compromise they do not wish to feel as if they are giving either side a benefit. During the second stage of postconviction proceedings, Miller had submitted an affidavit averring that it was his strategy to focus on securing an acquittal through self-defense while still allowing the jury to consider involuntary manslaughter.

¶ 8    Defendant also testified during postconviction proceedings. He stated that his attorneys never informed him of their intent to ask the jury to ignore the involuntary-manslaughter instruction. Rather, Miller told defendant that he would argue that defendant was guilty of involuntary manslaughter instead of first-degree murder. Defendant testified that, had he known that counsel would ask the jury to disregard the involuntary-manslaughter instruction, he would have accepted a bench trial on stipulated evidence in order to secure a conviction of second-degree murder. Defendant never consented to the withdrawal or abandonment of an involuntary-manslaughter instruction.

¶ 9    The trial court found that defense counsel did not discuss his closing argument with defendant or inform defendant that he intended to abandon the involuntary-manslaughter instruction. It further found that counsel's argument did not amount to a withdrawal of the involuntary-manslaughter instruction. Moreover, it noted that the manner in which counsel argued the case was a strategic decision. The trial court also found that defendant was not prejudiced by counsel's argument in that, given that the victim had suffered multiple blunt force injuries to the head, it was "highly improbable" that the jury would have returned a verdict of guilty of involuntary manslaughter, as that crime requires a reckless act.

¶ 10                                  III. ANALYSIS

¶ 11    Defendant raises two arguments on appeal. First, he contends that, had he known the content of trial counsel's closing argument, he would have chosen a bench trial on stipulated evidence where he would have been found guilty of second-degree murder (the trial court manifested its belief that second-degree murder would have been appropriate). Second, defendant contends that the argument constituted a withdrawal of the involuntary-manslaughter instruction and that whether to make such a withdrawal was a question only he could decide. The first issue comes to us following a dismissal during second-stage postconviction proceedings, so our review is *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Regarding the latter issue, an evidentiary hearing was held. Therefore, to the extent that fact-finding and determinations of credibility are involved, we apply the manifestly-erroneous standard. *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). Under this standard, we will reverse a decision of the trial court only where it has committed plain, evident, and indisputable error. *People v. Guerrero*, 2012 IL 112020, ¶ 13. Where such

considerations are not at issue, as on questions of law, we conduct our *de novo* review. *Id.* On such questions, we owe the trial court no deference and may freely substitute our judgment for that of the trial court. *People v. Douglas*, 2011 IL App (1st) 093188, ¶ 20. We now turn to defendant's first issue.

¶ 12 Defendant first argues that he would have pursued the bench trial on stipulated evidence had he known that counsel would abandon his request that the jury consider involuntary manslaughter. He contends that, if the trial court had not dismissed this claim, he would have been able to establish prejudice from his attorney's closing argument in the context of a claim of ineffective assistance of counsel. *Cf. People v. McCarter*, 385 Ill. App. 3d 919, 943 (2008) ("For ineffective assistance claims under *Strickland*, prejudice is presumed if there is a reasonable probability that the defendant would have waived a jury trial in the absence of the alleged error."). Moreover, defendant argues that the trial court engaged in premature fact-finding when it rejected his allegation that he would have sought a bench trial and a second-degree murder conviction if he had been aware of counsel's intentions regarding closing argument. *People v. Coleman*, 183 Ill. 2d 366, 380-01 (1998) ("Moreover, our past holdings have foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding.").

¶ 13 We are compelled to disagree with defendant. To the extent that defendant asserts that proceeding on this claim would have allowed him to establish "a key aspect of the prejudice he suffered," we are unpersuaded. Prejudice is a component of a claim of ineffective assistance of counsel (see, *e.g.*, *People v. Gray*, 2012 IL App (4th) 110455, ¶ 45); it is not an independent claim in itself. If the facts underlying this purported claim had been relevant to establishing prejudice in the context of a fully developed claim of ineffective assistance of counsel, the dismissal of this *claim* would not have foreclosed defendant from relying on those *facts*. See *Dunlap v. Alcuin Montessori School*, 298 Ill. App. 3d 329, 337 (1998) (holding that denial of motion to dismiss for failure to state a cause of action alleging a letter was defamatory did not preclude evaluation of whether the letter was defamatory at summary judgment stage of proceedings); see also *Bailey v. Allstate Development Corp.*, 316 Ill. App. 3d 949, 955-56 (2000). In other words, the mere fact that the subject matter of this claim may have been relevant to establishing prejudice with regard to another claim does not render this a viable and freestanding claim. Thus, we cannot attribute error to the trial court's decision to dismiss this claim on that basis.

¶ 14 Furthermore, defendant averred that, had he known of counsel's intent to pursue an "all-or-nothing approach" in closing argument, he "would have not risked [a] jury trial and instead [would have] taken the stipulated bench-trial for second-degree murder." He argues that he made "a substantial showing of a constitutional violation in that his ability to make a knowing decision not to pursue a second-degree murder verdict at a bench trial was erased by his counsel's unilateral decision to downplay, if not effectively withdraw, the option that the jury consider finding [him] guilty of involuntary manslaughter." Counsel's alleged "unilateral decision" was manifested through his closing argument.

¶ 15 The content of closing argument is generally considered a matter of trial strategy. *People v. Milton*, 354 Ill. App. 3d 283, 289 (2004); see also *State v. Williams*, 3d Dist. No. 9-07-61,

2008-Ohio-3887, ¶ 70; *Ransonette v. State*, 550 S.W.2d 36, 41 (Tex. Crim. App. 1976); *Commonwealth v. Hudson*, 314 A.2d 231, 235 (Pa. 1974) ("Counsel's determination of the tactical content of an effective closing argument is necessarily a matter of trial strategy."). The United States Supreme Court explained it thusly:

> "The right to effective assistance extends to closing arguments. [Citations.] Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact, [citation], but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. [Citation.]' " *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).

Thus, it would appear that what defendant is allegedly aggrieved by is a matter of trial strategy, which would typically not be cognizable as a claim of ineffectiveness. *People v. Max*, 2012 IL App (3d) 110385, ¶ 65.

¶ 16 Defendant, however, argues that counsel's closing argument impacted upon his decision to exercise a right of constitutional magnitude. It is, of course, the case that, in Illinois, whether to waive a jury trial is a state constitutional right belonging to a defendant. *People v. Barkes*, 399 Ill. App. 3d 980, 988 (2010). Moreover, we note that, to the extent that defendant's argument suggests that his desire to pursue a different lesser included offense (second-degree murder instead of involuntary manslaughter) was thwarted, it raises constitutional implications as well. See *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994) (holding that the decision as to whether to submit a lesser-included-offense instruction is analogous to the decision to enter a plea).

¶ 17 That said, the mere fact that an issue has constitutional implications does not mean that it necessarily rises to the level of a constitutional deprivation. Consider, for example, the traditional dichotomy between direct and collateral consequences as it affects the validity of a guilty plea. Due process requires that a guilty plea be knowing and voluntary. *People v. Hughes*, 2012 IL 112817, ¶ 35. Whether a plea is knowing and voluntary presents a constitutional issue. *People v. Blankley*, 319 Ill. App. 3d 996, 1007 (2001). Before a plea can be deemed knowing and voluntary, a defendant must be made aware of the direct consequences of the plea. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). On the other hand, the defendant's awareness of collateral consequences is not required from a constitutional perspective. *Hughes*, 2012 IL 112817, ¶ 36. Even where the consequence is severe, such as civil commitment as a sex offender, a defendant need not be made aware of the consequence if it is collateral. *Id.* ¶ 40. That such a consideration may have, in fact, bore upon the defendant's mind is of no constitutional significance. Put differently, that the consequence had an impact upon a defendant's exercise of a constitutional right does not mean that the failure to advise the defendant of that consequence is a constitutional issue.

¶ 18 Likewise, we cannot hold that defendant's awareness (or lack thereof) of defense counsel's trial strategy regarding closing argument constitutes a constitutional issue. Such

a holding would elevate to constitutional magnitude countless issues that traditionally fall within the realm of trial strategy (*e.g.*, "had I known trial counsel would not bring a motion to suppress certain evidence, I would have accepted the State's offer to plead guilty to a lesser charge"; "if I had known counsel was going to be so reckless with peremptory strikes and run out of them before the end of *voir dire*, I would have chosen a bench trial"; or "counsel never told me he would not call a certain witness to establish an alibi defense, otherwise I would have testified to do so"). In short, we are unpersuaded by defendant's attempt to transmute trial strategy into constitutional error. Thus, for the purpose of this appeal, it is not enough that counsel's argument may have impacted upon defendant's decision to seek a bench trial and a conviction of second-degree murder. Anything short of the functional withdrawal of defendant's request that the jury consider involuntary manslaughter is insufficient to warrant a reversal.

¶ 19    Before moving on to that issue, we note defendant's complaint that the trial court engaged in premature fact-finding when it dismissed this claim. Specifically, defendant points out that the trial court found that there was "no indication" that defendant would have requested a bench trial as opposed to a jury trial had he been aware of the content of defense counsel's intended closing argument. It is true that such fact-finding is not proper during second-stage postconviction proceedings. *Coleman*, 183 Ill. 2d at 381. However, our resolution of this issue renders this contention immaterial; neither of our holdings is dependent upon whether defendant would have, in fact, chosen a bench trial had he been aware of counsel's intended argument. Quite simply, this claim cannot stand as an independent claim of prejudice outside the context of a claim of ineffective assistance of counsel (that is, without satisfying the other prong of that analysis), and it also fails as it is actually an attempt to convert a matter of strategy into a constitutional error (making irrelevant what defendant would have done in response to that strategic decision). We now turn to the question of whether counsel's argument effected a withdrawal of the involuntary-manslaughter instruction.

¶ 20    On that issue, defendant argues that defense counsel's closing argument "diminished, if not eviscerated, [his] choice to request involuntary manslaughter instructions." Defendant claims that, contrary to his wishes, counsel embarked on an "all-or-nothing approach" in which the jury had to choose between first-degree murder and acquittal. We disagree with defendant. It is beyond dispute that it was for defendant to decide whether to submit various lesser-included-offense instructions to the jury. *Brocksmith*, 162 Ill. 2d at 229. However, we see nothing in counsel's closing argument that would amount to the functional withdrawal of the involuntary-manslaughter instruction.

¶ 21    As set forth earlier, defense counsel argued as follows:

"[The j]udge will give you the choice of looking at involuntary manslaughter and deciding whether or not that is the charge that [defendant] is truly guilty of.

I consider that a compromised verdict. This has been a trial of self defense. We started with self defense and we are ending with self defense, because that is the truth; and every piece of physical evidence from the hinges on the door to the money in the gas tank, the rice cooker to the fact that the cooker was plugged in supports [defendant's]

version of what occurred; and that is self defense.

Now, the State may try to argue to you yet, but the evidence still supports involuntary manslaughter. They may argue, why don't you compromise? We are not asking you that. It's a case of self defense.

I don't want a compromised verdict, and I don't want first degree murder, because the State can't prove it."

This is the passage that defendant contends "eviscerated" the involuntary-manslaughter instruction. We do not see where in this argument counsel tells the jury to disregard the involuntary-manslaughter instruction. It is true he calls it a "compromised verdict" and states that he "does not want a compromised verdict." However, he also states that he does not "want first degree murder." Clearly, the jury did not disregard the first-degree-murder instruction simply because counsel stated he did not want it, so it is unclear to us why we should conclude that the involuntary-manslaughter instruction was disregarded based on a similar statement. Regarding counsel's statement that they were beginning with self-defense and ending with self-defense, we note that the most favorable possible result for defendant was an acquittal. Nothing in the record indicates that defendant wanted counsel to abandon attempting to secure an acquittal. Obviously, a conviction of involuntary manslaughter and an acquittal are inconsistent results. Thus, to the extent that counsel argued for an acquittal based on self-defense, he necessarily also was arguing against involuntary manslaughter.

¶ 22    It is possible that counsel could have argued for involuntary manslaughter in the alternative–"acquit my client, but if you don't, then convict him of involuntary manslaughter." Counsel credibly explained why he did not proceed in such a fashion. He stated that arguing for involuntary manslaughter would have undermined the credibility of his attempt to secure an acquittal based on self-defense, which, as we have noted, would have been the best possible result for defendant. Thus, he tried to imply that the involuntary-manslaughter instruction came from the trial judge. Counsel explained that, if the jury did wish to compromise, it would be more likely to find defendant guilty of involuntary manslaughter if it did not believe that this instruction came from defendant, since, when jurors are seeking to compromise, they do not wish to feel as if they are giving a benefit to either side. Thus, though counsel was not actively arguing for involuntary manslaughter, he was placing the option before the jury in the manner in which, in his professional judgment, the jury would be most receptive to it, while still keeping the option for an acquittal open. In short, there was no functional withdrawal of the involuntary-manslaughter instruction.

¶ 23    Defendant's claims are predicated upon counsel's argument being a functional withdrawal of the involuntary-manslaughter instruction. For example, defendant relies on *People v. DuPree*, 397 Ill. App. 3d 719, 734-35 (2010), for the proposition that a defendant who chooses to submit a lesser-included-offense instruction "has decided against an all-or-nothing strategy in favor of providing the jury with a middle way." *Id.* at 735. Defendant argues that he was denied this "middle way." However, as we have explained, counsel placed the involuntary-manslaughter instruction before the jury in the way that he believed the jury would be most receptive to it. As such, the "middle way" was presented to the jury. Parenthetically, we note that the manner in which counsel chose to pursue the option (that

is, by making it look like it came from the trial court so the jury would feel that it was an actual compromise) was clearly a matter of trial strategy. *Milton*, 354 Ill. App. 3d at 289.

¶ 24                                        IV. CONCLUSION

¶ 25        In conclusion, we hold that defendant's lack of awareness of the content of counsel's closing argument does not amount to a constitutional violation cognizable under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2008); see *People v. Harris*, 224 Ill. 2d 115, 124 (2007) ("[A] postconviction proceeding is a collateral attack upon the prior conviction and affords only limited review of constitutional claims not presented at trial.")) and that counsel's argument did not amount to the functional withdrawal of the involuntary-manslaughter instruction. We therefore affirm the judgment of the circuit court of Du Page County.

¶ 26        Affirmed.