2024 IL App (1st) 221131-U
No. 1-22-1131

FIRST DIVISION
April 15, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19 CR 04732 |
| | ) | |
| DAMIAN PRICE, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Domenica A. Stephenson, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held:* (1) The circuit court properly admitted other-crimes evidence. (2) Defendant failed to establish that the trial evidence was so closely balanced that the alleged errors would have affected the outcome of the case. (3) Defendant failed to establish that trial counsel's alleged ineffective assistance prejudiced him.

¶ 2    Defendant, Damian Price, appeals his conviction of aggravated domestic battery. He argues that the circuit court erred when it admitted other-crimes evidence since it was remote, and dissimilar to the charged offense; he was denied a fair trial where the State improperly

elicited a prior consistent, hearsay statement, and evidence of a prior bad act; and trial counsel provided ineffective assistance since trial counsel failed to make a closing argument. We affirm.

¶ 3                                  BACKGROUND

¶ 4        A grand jury indicted defendant with two counts of aggravated domestic battery (720 ILCS 5/12-3.3 (a-5) (West 2018)). The indictment alleged that defendant strangled E. Sykes on approximately January 12, 2019. Defendant entered a plea of not guilty, and he requested a jury trial.

¶ 5        The State filed a motion to admit proof of other crimes, in which it sought to introduce defendant's prior bad acts of domestic violence towards Sykes to establish intent or lack of mistake, state of mind, and propensity to commit acts of domestic violence. Defendant filed a response to the State's motion in which he argued that the prejudicial effect of the prior bad acts clearly outweighed the probative value. The circuit court held a hearing on the State's motion.

¶ 6                     A. Motion to Admit Proof of Other Crimes

¶ 7        At the motion hearing, the State proffered five prior incidents of domestic abuse involving defendant and Sykes. In June 2010, defendant and Sykes were involved in a verbal argument which became physical. Defendant choked Sykes and grabbed her under her right arm. In May 2011, defendant and Sykes were again involved in an argument. Defendant attempted to take her phone from her. In the process, he pulled her to the ground which dislocated her shoulder. In January 2012, defendant let himself into Sykes's home with keys he refused to return to her. He wanted to have sex, but she refused. He became upset, and he struck her multiple times and choked her. On May 26, 2012, Sykes came to the police station with redness and scratches around her left eye, and scratches on her right shoulder. She informed the police that defendant grabbed her by her hair, pushed her into a wall, and pushed at her left eye. In

February 2013, Sykes and another witness informed the police that defendant grabbed Sykes by her hair, dragged her on the floor, and struck her about her face. The police offices observed bleeding from her left knee, bruising to her elbow, and swelling to both sides of her face.

¶ 8    The State argued that all the incidents involved the same victim as the victim in the current case. Additionally, they argued that there were some factual similarities between the prior incidents and the current offense. Defense counsel argued that the admission of the prior bad acts would be unduly prejudicial. The circuit court took the matter under advisement.

¶ 9    At the next court date, the circuit court concluded that the other-crimes evidence was relevant, and that the probative value outweighed any unfair prejudice. The circuit court stated that there were multiple similarities between the incidents and the charged offense. In multiple instances, defendant choked Sykes, hit her in the face, grabbed her, and pulled her by the hair. They had a prior relationship, and a child together. Almost every instance involved a verbal altercation that turned physical. The circuit court also found that the incidents were proximal in time to the charged offense. The circuit court granted the State's motion to admit proof of other crimes for the purposes of state of mind, intent, absence of mistake, and propensity to commit acts of domestic violence.

¶ 10                          B. Trial

¶ 11    At trial, Sykes testified that she first met defendant in 2009, and they had a daughter together. They lived together in Berwyn, Illinois in 2011 and 2012. They ended their relationship in 2012, but they remained in contact to raise their daughter. On January 11, 2019, defendant dropped off their daughter at Sykes's house. Their daughter asked Sykes whether defendant could spend the night. Sykes said she would think about it. At approximately ten o'clock at night, Sykes dropped off her daughter at her friend's house to spend the night. Afterwards, she

went to pick up defendant at a liquor store. Defendant purchased two bottles of liquor from the store, and he and Sykes went back to her house.

¶ 12    Back at Sykes's home, they drank and smoked until approximately four to five o'clock in the morning. According to Sykes, defendant drank his entire bottle of liquor. She had about two cups and felt "buzzed." Between approximately four to five o'clock, Sykes asked defendant why he needed to stay with her that night. He became upset. The State then elicited the following testimony:

> "Q. Without getting into the specifics of anything, was it your understanding that he couldn't go back to the house that night?
> A. Yes.
> Q. You said you were asking him questions?
> A. Yes.
> Q. What were you saying to him?
> A. I was telling him that I knew him and that he didn't have to lie to me. And that him and the woman had got into it because he had put his hands on her and I said that wasn't right."

¶ 13    Sykes testified that defendant did not like her asking him questions, and that he "started to get wild with [her]." She told defendant that if he did not leave that she would call the police. She went to her bathroom. When she returned, defendant stood in her way to prevent her from getting her cellphone. She reiterated that he should leave, or she would call the police. Defendant became upset, and he grabbed her by both arms and threw her to the ground. Her side struck the ground first, but she landed on her back. Defendant sat on top of her, and he pinned her arms down with his knees. Defendant then placed both his hands on her throat, and he strangled her.

¶ 14    Sykes could not breathe or talk. She lost consciousness twice. She felt scared and weak, and she believed that he would kill her. She urinated herself, and she believed that if she had not urinated herself that he would have continued to strangle her. Defendant stood up. When

she started to stand up, defendant hit her three to four times on her right side which left behind a handprint.

¶ 15    After defendant left, Sykes called the police. When the police arrived, she asked them to turn off their car lights since she lived in a dangerous neighborhood and was concerned about drawing attention to her house. The police refused, and Sykes did not provide a police report. A few hours later, at approximately seven o'clock in the morning, Sykes called non-emergency services to make a report. Additionally, Sykes asked a friend to take photos of her injuries. (R. 268, 273-75) The circuit court admitted People's exhibits one through five into evidence.

¶ 16    People's exhibits one through three are photos of Sykes's neck. Various red markings are visible on her neck. People's exhibit four depicts the left side of Sykes's buttocks. There are clearly visible red markings on the left side of her buttocks. Additionally, visible in the upper left-hand corner of the photo is what appears to be a tattoo. People's exhibit five depicts what appears to be a large bruise on the right side of Sykes's right leg.

¶ 17    On March 21, 2019, a detective called her regarding her case. She went back to the police station, and she provided a video statement to Detective Carlos Mayas.

¶ 18    Sykes testified that defendant hurt her on a prior occasion. The circuit court admonished the jury that the forthcoming testimony could only be considered for the limited purposes of defendant's intent, lack of mistake, state of mind, or propensity to commit domestic violence.

¶ 19    On May 26, 2012, defendant followed Sykes into the bathroom, and he pushed her. She tripped into the bathtub. He attacked her and tried to gouge out her eyeballs. Defendant threatened to kill her. Following the attack, she went to the police station and filed a

complaint. The police took photographs of her injuries. The circuit court admitted People's exhibits six through nine into evidence.

¶ 20 Officer Ronald Pedecone testified that on May 26, 2012, he spoke with defendant at the police station. Defendant seemed agitated. Shortly after defendant left the police station, Sykes entered the police station and spoke with Pedecone. Pedecone noticed visible injuries to Sykes's face. Pedecone testified that People's exhibits six through nine accurately depicted Sykes's injuries on May 26, 2012.

¶ 21 Pedecone identified People's exhibits six and seven as photos of Sykes's left eye. He described Sykes's left eye as swollen with scratch marks around it. He testified that People's exhibits eight and nine depicted Sykes's right shoulder with visible red markings.

¶ 22 Detective Carlos Mayas testified that on March 21, 2019, he interviewed Sykes. Sykes told him that defendant strangled her. The State rested. Defense counsel called defendant to testify.

¶ 23 Defendant testified that he did not strangle Sykes on January 12, 2019. She called him several times to come over that night. She picked him up, they stopped at a liquor store, and then they went to her house. Defendant did not strike Sykes that night, rather she struck him and damaged his personal property. He attempted to leave the house, and she tried to prevent him from leaving. When he left her home, she did not have any visible marks on her body.

¶ 24 On cross-examination, defendant denied drinking alcohol on the night of the incident. He stated that she was intoxicated, became irritated, and started to attack him. He did not defend himself.

¶ 25 The State showed defendant People's exhibit four, and they elicited the following testimony:

"Q. Showing you what's People's—previously been admitted into evidence as People's Exhibit Number 4. You've seen this photograph—you've seen this photograph that I'm showing you; correct?
A. Now, yes.
Q. Okay. You see a hand print in this photograph; right?
A. No.
Q. You see marks in this photograph?
A. No. I see a tattoo image.
Q. So you don't see any red marks in this photograph?
A. It could be a tattoo or own imprint. I don't know.
Q. So you—so, in the upper left-hand corner, you see what's clearly a tattoo; is that correct?
A. It looks like a tattoo.
Q. And in the center of this picture, do you see red marks?
A. No.
Q. You don't see anything?
A. No."

¶ 26    Defendant did not recall whether he struck Sykes on May 26, 2012. He denied pushing her or attempting to gouge out her eyes. He denied living with Sykes on May 26, 2012. He did not recall speaking with Pedecone on May 26, 2012.

¶ 27    The State gave a closing argument. Defense counsel gave the following closing argument:

"You've heard the evidence in this case, all of the evidence in this case. You heard from Ms. Sykes, and you heard from [defendant]. You heard from detectives. You heard from the police officers. This closing argument is not evidence.
What [defendant] told you, what Ms. Sykes told you, what the police told you is evidence. So I'm not going to waste your time with this closing argument. Give to it what you think happened. You are the evaluator of the evidence, and you alone.
Thank you."

¶ 28    The jury found defendant guilty of aggravated domestic battery. Defendant filed a motion for a new trial. In the motion, he argued that the State failed to prove him guilty beyond a reasonable doubt, and that the circuit court erred when it allowed the State to admit proof of

other crimes. The circuit court denied the motion and sentenced defendant to three years' imprisonment.

¶ 29    Defendant appealed.

¶ 30                                ANALYSIS

¶ 31                        A. Other Crimes Evidence

¶ 32    Defendant argues that the circuit court erred when it allowed the State to introduce other-crimes evidence since the other act of domestic abuse was remote in time, and it bore only a minimal resemblance. The State argues that the circuit court did not err since the probative value of the other-crimes evidence was not substantially outweighed by the risk of unfair prejudice.

¶ 33    Generally, evidence of other crimes is not admissible to show propensity to commit the charged crime. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, the general rule does not apply in domestic violence cases. 725 ILCS 5/115-7.4 *et seq.* (West 2020). Still, "[w]hen evidence of other crimes is offered, the [circuit court] must weigh its probative value against its prejudicial effect, and may exclude the evidence if its prejudicial effect substantially outweighs its probative value." *People v. Illgen*, 145 Ill. 2d 353, 365 (1991). When weighing the probative value of the other-crimes evidence against its prejudicial effect in a domestic violence case, "the court *may* consider: (1) the proximity in time to the charged or predicate offense; (2) the degree of factual similarity to the charged or predicate offense; or (3) other relevant facts and circumstances." 725 ILCS 5/115-7.4(b) (West 2020).

¶ 34    "We review the [circuit] court's ruling on the admissibility of other-crimes evidence for an abuse of discretion." *People v. Valdez*, 2022 IL App (1st) 181463, ¶ 57. "An abuse of discretion occurs only where the [circuit] court court's decision is arbitrary, fanciful, or

unreasonable to the degree that no reasonable person would agree with it." *People v. Rivera*, 2013 IL 112467, ¶ 37.

¶ 35    The State proffered five prior incidents of domestic abuse involving defendant and Sykes. *Supra*, ¶ 7. The five prior incidents occurred June 2010; May 2011; January 2012; May 26, 2012; and February 2013. The circuit court determined that the prior incidents were proximal in time to the charged offense which occurred on approximately January 12, 2019, and that there were multiple similarities between the incidents and the charged offense. Specifically, the circuit court noted that each incident began with a verbal altercation which turned into a physical one. In multiple instances, defendant choked Sykes, hit her in the face, grabbed her, and pulled her by the hair. The circuit court also found it relevant that defendant and Sykes had a prior relationship, and a child together. While the circuit court granted the State's motion to admit all five prior incidents of domestic abuse, the State only introduced evidence of the May 26, 2012, incident at trial. *People v. Johnson*, 406 Ill. App. 3d 805, 810-11 ("The State's decision to limit the amount of other-crimes evidence reduced the possible prejudicial effect of such evidence at defendant's trial").

¶ 36    The court may consider the proximity in time between the prior crime and the charged offense. 725 ILCS 5/115-7.4(b)(1) (West 2020). The other-crime evidence occurred between approximately nine years to six years prior to the conduct at issue in this case. While this may lessen its probative value, alone it is insufficient to compel a finding that the circuit court abused its discretion. *People v. Donoho*, 204 Ill. 2d 159, 185 (2003) (recognizing that other courts upheld admission of other-crimes evidence over twenty years old).[1] Still, prior incidents that

---

[1] *Donoho* analyzes section 115-7.3 of the Code which follows the same analysis as section 115-7.4 of the Code. See *People v. Dabbs*, 239 Ill. 2d 277, 285-86 (2010).

occurred between approximately nine years to six years prior to the conduct at issue in this case are proximal in time.

¶ 37        Next, while a circuit court may consider "the degree of factual similarity" between the two incidents (725 ILCS 5/115-7.4(b)(2) (West 2020)), where other-crimes evidence is offered for a purpose other than *modus operandi*, "mere general areas of similarity will suffice." *Illgen*, 145 Ill. 2d at 372-73. There are similarities between the prior incidents, and the charged offense. All the prior incidents and the charged offense involved defendant and Sykes. Generally, defendant became upset with Sykes and resorted to physical abuse. In the charged offense, defendant grabbed Sykes, choked her, pushed her to the ground, and struck her. Each of the prior incidents shared at least one specific characteristic with the charged offense. *Supra*, ¶ 7. We recognize that some differences will always exist between independent incidents, however, these differences do not eliminate the probative value of other-crimes evidence. *Illgen*, 145 Ill. 2d at 373.

¶ 38        Additionally, the circuit court may consider "other relevant facts and circumstances." 725 ILCS 5/115-7.4(b)(3) (West 2020). The circuit court determined that defendant and Sykes's prior relationship, and that they raised a child together were relevant to its analysis.

¶ 39        After carefully considering the factors provided by section 115-7.4 of the Code, the circuit court concluded that the probative value of the May 26, 2012, incident outweighed any danger of unfair prejudice. The record shows that the circuit court's decision was well-reasoned and thought-out. Accordingly, the circuit court did not abuse its discretion when it allowed the State to introduce other-crimes evidence. *Rivera*, 2013 IL 112467, ¶ 37. ("An abuse of discretion occurs only where the [circuit] court court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it").

¶ 40                                    B. Plain Error

¶ 41        Defendant next argues two forfeited issues under the first prong of the plain-error doctrine. Defendant first argues that the State elicited a prior consistent, hearsay statement—Sykes told Detective Mayas that defendant strangled her—and relied on that statement in closing argument. Defendant next argues that the State improperly elicited evidence of a prior bad act—defendant needed a place to stay since he put his hands on another woman. The State responds that neither claim constituted an error, and that the evidence was not closely balanced. Defendant argues that the outcome of this case turned on how the finder of fact resolved a credibility contest between him and Sykes; thus, the evidence was closely balanced. See *People v. Sebby*, 2017 IL 119445, ¶ 63 (citing *People v. Naylor*, 229 Ill. 2d 584, 606-07 (2008)).

¶ 42        Generally, preservation of an issue for appellate review requires both a trial objection and a posttrial motion raising the issue. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The parties agree that defendant failed to preserve the issue for review. Still, we may consider a forfeited claim when:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trail and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

We construe the plain-error doctrine as a narrow and limited exception to the general forfeiture rule, rather than as a general savings clause. *People v. Johnson*, 238 Ill. 2d 478, 484 (2010). Under either prong, the defendant bears the burden of persuasion. *Id.* at 485. We review *de novo* whether we may review a forfeited claim. *Id.*

¶ 43      Typically, the first step of plain-error review is to determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). However, "[w]here the only basis proffered for plain-error review is a claim that the evidence is closely balanced, an assessment of the impact of an alleged evidentiary error is readily made after reading the record." *People v. White*, 2011 IL 109689, ¶ 148. "When it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred." *Id.*

¶ 44      In determining whether the evidence adduced at trial was closely balanced, a reviewing court must make a commonsense assessment of the evidence within the context of the circumstances of the individual case. *People v. Belknap*, 2014 IL 117094, ¶ 52. In *Naylor*, our supreme court determined that the outcome of that case turned on how the finder of fact resolved a "contest of credibility." *Naylor*, 229 Ill. 2d at 606-07. Our supreme court then stated, "[g]iven these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilt necessarily involved the court's assessment of the credibility of the two officers against that of defendant." *Id.* at 607. Our supreme court concluded that because both versions were credible, the evidence was closely balanced. *Id.* at 608.

¶ 45      Here, unlike in *Naylor*, Sykes's version of events is corroborated by the photos of her injuries and the properly admitted other-crimes evidence which indicated that defendant had a propensity to abuse Sykes. Additionally, defendant was not credible. At trial, the State presented defendant with People's exhibit four. From our commonsense assessment of People's exhibit four, we determined that it clearly showed red markings on the left side of Sykes's buttocks.

Defendant's failure to acknowledge the red markings in the photo made his version of the events less plausible.

¶ 46    Thus, based on the extrinsic evidence presented at trial which corroborated Sykes's version of events, and our determination that defendant lack credibility, the evidence in this case was not so closely balanced that either of defendant's alleged errors would have affected the outcome of the case. *People v. White*, 2011 IL 109689, ¶ 148.

¶ 47                    Ineffective Assistance of Counsel

¶ 48    Defendant next frames the same two forfeited issues as ineffective assistance of counsel claims. *Supra* ¶ 40. Additionally, defendant argues that trial counsel provided ineffective assistance since trial counsel failed to make a closing argument.

¶ 49    To prevail on a claim the trial counsel provided ineffective assistance, a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to satisfy either showing defeats an ineffective assistance claim. *Id.* at 687. "Establishing prejudice under the *Strickland* inquiry requires a defendant to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *People v. Barrow*, 195 Ill. 2d 506, 520 (2001) (quoting *Strickland*, 466 U.S. at 694).

¶ 50    First prong plain-error review and an ineffective assistance of counsel claim are similar insofar as a defendant in either case must show that he was prejudiced. *White*, 2011 IL 109689, ¶ 133. "Accordingly, where a defendant fails to show prejudice, a defendant's allegations of

ineffective assistance of counsel and plain-error under the first prong both fail." *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47 (citing *White*, 2011 IL 109689, ¶ 133).

¶ 51 We have already determined that the evidence in this case was not so closely balanced that the alleged errors would have affected the outcome of this case. *Supra*, ¶ 45. Accordingly, defendant's forfeited issues likewise fail as ineffective assistance of counsel claims. *Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 52 Regarding defendant's claim that trial counsel provided ineffective assistance because trial counsel failed to make a closing argument, we note that the record rebuts defendant's claim. The record clearly shows that defense counsel did make a brief closing argument. Additionally, we note that "[t]he content of closing argument is generally considered a matter of trial strategy" (*People v. Shamlodhiya*, 2013 IL App (2d) 120065, ¶ 15), and "counsel's strategic choices are virtually unchallengeable" (*People v. Palmer*, 162 Ill. 2d 465, 476 (1994). Nevertheless, for the reasons stated above (*Supra,* ¶ 45), defendant cannot show that but for defense counsel's brief closing argument that there was a reasonable probability that the result of the proceeding would have been different. *Barrow*, 195 Ill. 2d at 520. Thus, defendant's ineffective assistance of counsel fails since he cannot establish prejudice. *Strickland*, 466 U.S. at 687.

¶ 53                                                        CONCLUSION

¶ 54 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 55 Affirmed.