Docket No. 108253.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JAMES T. JOHNSON, Appellee.

*Opinion filed October 21, 2010.*

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Freeman.

## OPINION

The issue in this appeal is whether defendant's forfeiture of his challenge to the trial court's *ex parte* communication should be excused under either prong of plain-error analysis. The appellate court determined that defendant's claim was reviewable under the second prong of the plain-error doctrine because the error was sufficiently serious to deny him a fair trial. 388 Ill. App. 3d 199, 203 (*Johnson II*). For the reasons that follow, we reverse the appellate court's judgment.

# I. BACKGROUND

The State charged defendant, James T. Johnson, with one count of criminal sexual abuse, a Class A misdemeanor (720 ILCS 5/12–15(c) (West 2004)), alleging that on May 23, 2005, defendant knowingly had sexual intercourse with the victim, A.C., when she was between 13 and 17 years old, and defendant was less than 5 years older than A.C. Defendant's first jury trial in the circuit court of Will County resulted in a deadlocked jury, and the court declared a mistrial. The State then retried defendant.

At defendant's second jury trial, A.C. testified that she was born on November 12, 1990, and defendant was born on March 29, 1988. On the date of the incident, May 23, 2005, A.C. was 14 years old and had been dating defendant, who was 17 years old, for less than one year. Although it was a regular school day, A.C. did not report for school that morning. Instead, A.C. went to defendant's house and defendant called her school to report falsely she was sick. A.C. and defendant watched television together until defendant's mother left for work. After defendant's mother departed, A.C. and defendant had sexual intercourse.

Later, A.C. heard her mother knocking on the front door of defendant's house. Rather than answering the door, A.C. and defendant went to a second-story back room and waited for A.C.'s mother to leave. Less than an hour later, A.C. heard her mother and father return to defendant's house. A.C. and defendant again did not respond and waited for her parents to leave. A.C.'s father returned to the house a second time, but left after receiving no response from anyone inside. Thereafter, A.C. and defendant left and went to a friend's house, staying there for two or three hours before returning to defendant's house.

Later that evening, at approximately 5:30 p.m., a police officer arrived at defendant's house looking for A.C. A.C. left with the officer, who drove her to her parents' home. A.C.'s mother then took her to the police station, where A.C. told officers she had sexual intercourse with defendant that morning. A.C. also went to a hospital for an examination and later learned that she was pregnant.

On cross-examination, A.C. testified that she voluntarily had intercourse with defendant and he never forced her to do anything.

A.C. reported she cared for defendant at the time and she continued to care for him after the incident. A.C. also stated that her parents were angry at her and defendant, and they refused to let A.C. see defendant.

The State next called Lockport police detective William Sheehan, who interviewed defendant at the police department. During that interview, defendant admitted having sexual intercourse with A.C. on May 23, 2005. The State introduced defendant's birth certificate and then rested its case against defendant. The defense rested without presenting any evidence.

Following closing arguments, the jury found defendant guilty of criminal sexual abuse. After dismissing the jurors, the trial judge explained to the parties a note he received from the jury during its deliberations, as follows:

> "Approximately 30 minutes ago, 40 minutes ago, I received a note, this note[,] from the jurors. 'Our desicion [*sic*] is 11 to 1, we need advise/help [*sic*].' My response to that was, 'continue deliberating.' This was not on the note when I received it, this writing on the bottom here."

The writing on the bottom of the note referenced by the judge indicated, "We have one not guilty who will not change. 11 vote guilty."

Defense counsel responded "okay" to the information about the jury note, but did not object to the trial court's response. Nor did defendant raise a claim based on the jury note in his posttrial motion for a new trial.

On direct appeal, however, defendant challenged the trial court's answer to the jury note, arguing that the court's response in defendant's absence denied his right to be present and his right to counsel at a critical stage in the proceedings. The State countered that defendant forfeited his claim by failing to preserve it with a timely objection and posttrial motion. The State further argued defendant could not demonstrate plain error to excuse his forfeiture.

Rejecting the State's plain-error argument, the appellate court reversed defendant's conviction, holding that the trial court's *ex parte* communication with the jury deprived defendant of his constitutional rights to be present and to counsel and the State failed to show

-3-

defendant was not prejudiced by the court's communication. *People v. Johnson*, 383 Ill. App. 3d 281, 285 (2008) (*Johnson I*). Justice Carter specially concurred, agreeing that defendant's conviction should be reversed but contending that the court should have reviewed his claim for plain error, with the burden of persuasion on defendant. *Johnson I*, 383 Ill. App. 3d at 285 (Carter, J., specially concurring).

This court denied the State's petition for leave to appeal. Instead, we issued a supervisory order directing the appellate court to vacate and "reconsider its judgment, in a published opinion, in light of the rule that in a plain-error analysis, the burden of persuasion is on the defendant." *People v. Johnson*, 229 Ill. 2d 681 (2008) (supervisory order).

On remand, the appellate court again reversed defendant's conviction, concluding that the trial court's *ex parte* response to the jury note deprived defendant of his constitutional right to be present during all critical proceedings. *Johnson II*, 388 Ill. App. 3d at 204. Accordingly, the appellate court found that defendant satisfied his burden under plain-error analysis to show the trial court's *ex parte* communication with the jury prejudiced him. *Johnson II*, 388 Ill. App. 3d at 203. This court allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315.

## II. ANALYSIS

The primary issue in this case is whether the trial court's improper *ex parte* communication with the jury about the note is reviewable as plain error. When, as here, a defendant fails to object to an error at trial and include the error in a posttrial motion, he forfeits ordinary appellate review of that error. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Consequently, as the parties agree, defendant forfeited, or procedurally defaulted, his challenge to the trial court's *ex parte* communication with the jury about the note by failing to object and raise his claim in a posttrial motion.

Under Illinois's plain-error doctrine, however, a reviewing court may consider a forfeited claim when:

> "(1) a clear or obvious error occurred and the evidence is
> so closely balanced that the error alone threatened to tip the

-4-

scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the strength of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

The doctrine is intended to ensure that a defendant receives a fair trial, but it does not guarantee every defendant a perfect trial. *Herron*, 215 Ill. 2d at 177. Rather than operating as a general savings clause, it is construed as a narrow and limited exception to the typical forfeiture rule applicable to unpreserved claims. *Herron*, 215 Ill. 2d at 177.

A defendant seeking plain-error review has the burden of persuasion to show the underlying forfeiture should be excused. *Herron*, 215 Ill. 2d at 187. The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*. *People v. McLaurin*, 235 Ill. 2d 478, 485 (2009).

On appeal, the State acknowledges that the trial court erred when it responded to the jury note without consulting the parties, citing *People v. Kliner*, 185 Ill. 2d 81 (1998), *People v. McDonald*, 168 Ill. 2d 420 (1995), and *People v. Childs*, 159 Ill. 2d 217 (1994). Nonetheless, the State argues that defendant forfeited appellate review of that error by failing to object at trial and raise the error in a posttrial motion. The State further argues that the forfeited issue is not reviewable as plain error because the evidence of defendant's guilt was not closely balanced and the error was not serious enough to deny defendant a fair trial. The State contends that the substance of the trial court's response to "continue deliberating" was appropriate and did not impact the fairness of defendant's trial.

Defendant concedes he forfeited his claim, but argues it is reviewable under both prongs of plain-error analysis. Defendant argues the evidence is closely balanced and the trial court's error involved his substantial constitutional right to be present with counsel at all critical proceedings, implicating the fundamental fairness and integrity of his trial. Defendant also argues the substance of the trial court's communication is irrelevant to a plain-error analysis. Alternatively, defendant maintains a more lenient standard of procedural default should apply when, as here, the basis for the

defendant's claim is the trial judge's erroneous conduct.

Because the State concedes that the trial court's *ex parte* communication in this case was error, this appeal focuses on the two-prong test governing a plain-error analysis. See, *e.g.*, *Piatkowski*, 225 Ill. 2d at 565 (ordinarily, the first step in a plain-error analysis is determining whether a clear and obvious error occurred). Under the first prong, the defendant must show that the evidence was "so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error." *Piatkowski*, 225 Ill. 2d at 565. As this court has explained, "[w]hen error occurs in a close case, we will opt to 'err on the side of fairness, so as not to convict an innocent person.' " *Piatkowski*, 225 Ill. 2d at 566, quoting *Herron*, 215 Ill. 2d at 193. The question of whether the evidence is closely balanced is distinct from a challenge to the sufficiency of the evidence. *Piatkowski*, 225 Ill. 2d at 566. Defendant was accused of committing criminal sexual abuse by knowingly having sexual intercourse with A.C. when she was between 13 and 17 years old and he was less than 5 years older than A.C. See 720 ILCS 5/12–15(c) (West 2004).

Here, it is undisputed that on May 23, 2005, the victim, A.C., was 14 years old, and defendant was 17 years old. A.C. also testified for the State, explaining that she had consensual sexual intercourse with defendant at his home that day. Detective Sheehan testified that defendant admitted to having intercourse with A.C. that day. Defendant did not present evidence or witnesses in his defense, nor did he testify.

We reject defendant's characterization of the evidence as closely balanced for the purpose of plain-error analysis. To the contrary, in our view, the strength of the evidence is overwhelming. A.C. testified that she and defendant had sexual intercourse and defendant admitted the same to Detective Sheehan. Neither A.C.'s nor Detective Sheehan's testimony was substantively impeached or otherwise contested on that issue. In addition, the ages of A.C. and defendant were not disputed. Accordingly, defendant's forfeiture may not be excused under the first prong of the plain-error test.

We next consider the second prong of plain-error analysis, requiring defendant to show that, despite forfeiture, the error was "so serious that it affected the fairness of [his] trial and challenged the

-6-

integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. Under the second prong, the strength of the State's evidence is immaterial because prejudice to the defendant is presumed based on the importance of the right involved. *Herron*, 215 Ill. 2d at 187.

This court recently considered a trial court's *ex parte* communication with a jury under a plain-error analysis. See *McLaurin*, 235 Ill. 2d at 496. The *McLaurin* defendant challenged the trial court's discussion of several jury notes with counsel in defendant's absence, and the court's decision to instruct a bailiff to enter the jury room and tell the jury to continue deliberating. The defendant, however, did not object at trial and did not raise his claims in a posttrial motion, thus forfeiting review on appeal. *McLaurin*, 235 Ill. 2d at 485.

Before rejecting the defendant's argument that his forfeited claim should be reviewed as plain error as a violation of his substantial right to be present, this court observed that, "although criminal defendants have a 'general right to be present' at every stage of the trial, 'the broad "right to be present at trial" is not itself a substantial right under the Illinois Constitution.' " *McLaurin*, 235 Ill. 2d at 490, quoting *People v. Bean*, 137 Ill. 2d 65, 80-81 (1990). Instead, the right to be present is a "lesser right" that is intended to secure the substantial rights of a defendant, such as the right to confront witnesses, the right to present a defense, or the right to an impartial jury. In *McLaurin*, the defendant did not show that any of those underlying substantive rights had been violated. *McLaurin*, 235 Ill. 2d at 491. Likewise, this court observed that "the federal 'right of presence' is not itself an express constitutional right" before similarly determining that the defendant's federal right was not violated. *McLaurin*, 235 Ill. 2d at 492, quoting *Bean*, 137 Ill. 2d at 82-83.

This court was not persuaded by the defendant's argument that he was denied an opportunity to provide his own answers to the jury's note, finding the defendant's failure to challenge the substance of the trial judge's responses significant. Noting that a trial court has broad discretion to respond to a jury note indicating a deadlocked jury, we concluded that the court's responses to "keep on deliberating with an open mind" and "keep on deliberating" were properly clear, simple, and not coercive. Thus, after reviewing the record, this court found

that the defendant was not denied a fair trial by his absence from the discussion of the jury notes. *McLaurin*, 235 Ill. 2d at 491-93.

This court also rejected the defendant's argument, based on the decisions in *People v. McDonald*, 168 Ill. 2d 420 (1995), and *People v. Childs*, 159 Ill. 2d 217 (1994), that his mere absence from the discussion of the jury notes required a new trial, regardless of the substance of the *ex parte* communication. Recognizing a defendant's right to appear and participate in person and by counsel at all proceedings involving his substantial rights, we nonetheless observed that *Childs* and *McDonald* further held that a defendant was not entitled to a new trial based on errors impacting that right unless he suffered actual prejudice. This court also noted that both defendants in *Childs* and *McDonald* properly preserved their claims of error, thus requiring the State to show that the errors were nonprejudicial under a harmless-error analysis. In contrast, the *McLaurin* defendant failed to preserve his claim, and, thus, he had the burden of persuasion in a plain-error analysis. Ultimately, this court concluded that defendant did not satisfy his burden. *McLaurin*, 235 Ill. 2d at 494-96.

In our view, *McLaurin* is dispositive on the issue of whether defendant's claim in this case is reviewable as plain error under the second prong. Defendant argues that his forfeited claim qualifies for review as second-prong plain error because the trial court's *ex parte* response to the jury's note was an error serious enough to deny him a fair trial, regardless of the substance of that communication. In *McLaurin*, however, we considered an almost identical *ex parte* response and concluded it did not deny the defendant a fair trial for purposes of plain-error review. *McLaurin*, 235 Ill. 2d at 491-93.

Furthermore, defendant is essentially arguing that his right to a fair trial was *per se* impacted based solely on the trial court's *ex parte* communication with the jury. Defendant contends that the substance of the communication is irrelevant to a plain-error analysis. Although this court historically required a new trial whenever any *ex parte* communication occurred between the trial judge and the jury, regardless of its substance, we have expressly moved away from such a rule. See *Childs*, 159 Ill. 2d at 227-28 (detailing "evolution" of this court's handling of *ex parte* communications between trial judge and jury). In fact, as we explained in *Childs*, an *ex parte* communication now serves as grounds for a new trial only if it results in injury or

prejudice to the defendant. *Childs*, 159 Ill. 2d at 227-28; see also *McDonald*, 168 Ill. 2d at 460. Simply put, a nonprejudicial *ex parte* communication is insufficient to impact the fairness of a defendant's trial.

Thus, as the State argues, when a defendant forfeits his challenge to a trial court's *ex parte* communication with the jury, it is necessary to consider the substance of that communication to determine whether it constitutes plain error. Here, as in *McLaurin*, the trial judge simply told the jurors to "continue deliberating," a clear and noncoercive response well within his discretion. See *McLaurin*, 235 Ill. 2d at 491 (noting that "the trial court has broad discretion when responding to a jury that claims to be deadlocked, although any response should be clear, simple, and not coercive").

After carefully reviewing *McLaurin*, we find no reason to depart from its reasoning and similarly conclude that the trial court's *ex parte* response to the jury to "continue deliberating" did not deny defendant a fair trial. Because the error was not "so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence," it is not reviewable as second-prong plain error. *Piatkowski*, 225 Ill. 2d at 565. Having determined that defendant's forfeited claim does not qualify for plain-error review under either prong, we hold that there is no basis to excuse its forfeiture.

Nor are we persuaded by defendant's alternative argument that the forfeiture rule should be relaxed because the procedural default involves the trial judge's conduct, citing *People v. Sprinkle*, 27 Ill. 2d 398, 400-01 (1963). We rejected this same argument in *McLaurin*, concluding the defendant failed to present a sufficiently compelling reason to justify relaxing the forfeiture rule. *McLaurin*, 235 Ill. 2d at 489. More recently, in the context of discussing *Sprinkle*, this court explained that excusing forfeiture based on the trial judge's conduct "is warranted when the trial court has overstepped its authority in the presence of the jury or when counsel is effectively prevented from objecting as any objection would have 'fallen on deaf ears.' " *People v. Hanson*, No. 106566, slip op. at 33 (June 24, 2010), quoting *McLaurin*, 235 Ill. 2d at 488.

Here, as we have already determined, the trial court did not overstep its authority by instructing the jury to "continue

deliberating." Although defendant may have been precluded from objecting to the trial court's initial *ex parte* communication when it was issued because he was not present, he did have the opportunity to object when the court later informed his counsel of that communication. Nothing in the record indicates that an objection would have been ignored by the trial court. Defendant, however, failed to object at that time and later failed to raise the claim in a posttrial motion. As *McLaurin* observed, "[f]ailure to raise claims of error before the trial court denies the court the opportunity to correct the error immediately and grant a new trial if one is warranted, wasting time and judicial resources." *McLaurin*, 235 Ill. 2d at 488, citing *Enoch*, 122 Ill. 2d at 185-87. We find no justification for relaxing the forfeiture rule in this case.

### III. CONCLUSION

We conclude that defendant has failed to meet his burden to show that his forfeited claim should be reviewed as plain error under either prong of plain-error analysis. We find no basis to excuse its forfeiture or to relax the forfeiture rule. Accordingly, we reverse the judgment of the appellate court and affirm the circuit court's judgment.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BURKE, dissenting:

Defendant, a high school student, was charged with criminal sexual abuse after he and his girlfriend, a fellow student and minor, engaged in consensual sex. A trial commenced on September 29, 2005. The jury retired to deliberate at 1:30 p.m. on September 30. At 4:05 p.m., the jury advised the court it was unable to reach a verdict. The trial court continued the case to October 3. On October 3, the jury continued to deliberate.[1] At 10:54 a.m., the jury advised the court

---

[1]The record does not disclose what time the jury resumed deliberations. The docket entry from September 30 states court was to resume at 9:30 a.m.

it was, in the words of the court, "hopelessly deadlocked." The trial court declared a mistrial.

A second trial commenced on April 19, 2006. The jury retired to deliberate at 2:14 p.m. At 4:17 p.m., the jury returned a guilty verdict. In the intervening time, the jury sent two notes to the trial judge. Within 1½ hours of retiring to deliberate, the jury sent a note stating: "Our desicion [*sic*] is 11 to 1, we need advise/help [*sic*]." The trial judge responded: "Continue deliberating." At 4:17 p.m., 30 to 40 minutes later, according to the trial judge's statement on the record, the jury returned its verdict. Thereafter, the trial judge advised the parties of the jury's note. At this time, the court also advised the parties there was additional writing at the bottom of the note which had not been there when he first received the note. This writing stated: "We have one not guilty who will not change. 11 vote guilty."

There is a second note from the jury in the record. This note, dated April 19, 2006, states, "What are the possible sentences for crimial [*sic*] sexual abuse?" The trial judge responded to this note, stating, "You should not be concerned with the possible punishment or sentence for the offense charged during your deliberations." The trial judge never advised the parties of this note or his response.

Relying on *People v. McLaurin*, 235 Ill. 2d 478 (2009), the majority concludes there was no reversible error in this case even though the trial judge responded to the jury's notes without contacting or consulting with either defendant *or* his attorney. I disagree with this conclusion and the majority's reliance on *McLaurin* and therefore dissent.

In *McLaurin*, the jury sent five notes to the trial judge during deliberations. The first note requested certain evidence. The jury sent a second note, stating it was deadlocked 8-4. The trial court, after consulting with both counsel, instructed the jury to continue deliberating. The jury then sent a third note, stating it was deadlocked 7-5. Before the court answered the third note, the jury sent another note again stating it was deadlocked 7-5. The jury, at this time, also requested to review certain testimony. The trial court provided the jury with the testimony and ordered the jury members to keep deliberating. Shortly thereafter, the jury returned a guilty verdict. Importantly, defense counsel was present and participated in the discussing concerning each of these notes. *McLaurin*, 235 Ill. 2d at

483.

On appeal, the defendant argued that his personal right to be present, under both the Illinois and federal constitutions, had been violated because he was absent from the conversations in which the jury notes were discussed. Noting the defendant failed to object at trial or raise the claim in his posttrial motion, we found the claim was reviewable only under the plain-error doctrine. Relying on *People v. Bean*, 137 Ill. 2d 65 (1990), we reasoned that the defendant's absence did not have an effect on any of his substantial rights and, therefore, no plain error occurred.

Notably, the defendant in *McLaurin* relied upon *People v. Childs*, 159 Ill. 2d 217 (1994), and *People v. McDonald*, 168 Ill. 2d 420 (1995), to support his contention that he was entitled to a new trial. However, we found both cases factually distinguishable. As we explained, in *McLaurin*, "defendant's counsel was present when the court considered the jury's notes," while in *Childs* and *McDonald*, "the person actually representing the defendant was absent." *McLaurin*, 235 Ill. 2d at 494.

In *McLaurin*, the defendant's attorney was present and participated in the discussions concerning each of the jury's notes and the trial court's responses. Here, in contrast, neither defendant nor his attorney was present. Neither defendant nor his attorney was informed of the jury's note regarding its deadlock until *after* the jury had reached its verdict and been discharged, and they were never informed of the second note at all. Thus, unlike *McLaurin*, neither defendant nor his attorney was afforded an opportunity to take action necessary to secure defendant's rights. Because *McLaurin* is distinguishable from the present case, I do not find it helpful in addressing defendant's contentions.

The United State Supreme Court has held that it is error for a trial judge to respond to jury communications without the presence of either the defendant or his counsel. *Rogers v. United States*, 422 U.S. 35, 39, 45 L. Ed. 2d 1, 6, 95 S. Ct. 2091, 2095 (1975). Ordinarily, the State bears the burden of establishing whether the error was harmless beyond a reasonable doubt. See *People v. Kliner*, 185 Ill. 2d 81, 162 (1998). However, in this case, defendant failed to preserve his claim of error in his posttrial motion. Accordingly, in order to prevail, defendant must satisfy the plain-error rule, which allows a reviewing

court "to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "Essentially, the fairness of the trial must be undermined." *People v. Keene*, 169 Ill. 2d 1, 17 (1995). The defendant bears the burden of persuasion under each prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). If the defendant is unable to establish plain error, the procedural default must be honored. *Keene*, 169 Ill. 2d at 17.

Defendant argues that the trial judge's actions undermined the fairness of his trial under the second prong of the plain-error rule because he did not have the opportunity to request an instruction pursuant to *People v. Prim*, 53 Ill. 2d 62 (1972). A *Prim* instruction "informs the jury of the requirement that the verdict be unanimous; that the jury has a duty to deliberate; that jurors must impartially consider the evidence; and that jurors should not hesitate to reexamine their views and change their opinions if they believe them to be erroneous, provided the change is not solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict." *People v. Chapman*, 194 Ill. 2d 186, 222 (2000). Defendant argues that the trial judge's direction to "keep deliberating" failed to properly convey the notion that jurors should not change their opinions solely for the purpose of returning a verdict.

Generally, trial judges are afforded discretion in matters concerning jury management. *People v. Roberts*, 214 Ill. 2d 106, 121 (2005). Nevertheless, it goes without saying that the integrity of a jury verdict "must be protected from coercion, duress or influence." *People v. Patten*, 105 Ill. App. 3d 892, 894 (1982). This court has recognized that a "verdict should express the deliberate judgment of the jury. The juror *** has an independent duty to perform, and he ought to be left free to pronounce his own conviction. A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees. Remarks by a trial judge calculated to effect the rendition of a verdict

without affording the jury an opportunity for careful consideration are unwarranted and often lead to great abuse. Whether the error is harmless or prejudicial depends upon the facts of the case." *People v. Golub*, 333 Ill. 554, 561 (1929).

Defendant argues that counsel's absence prevented the defense from requesting a *Prim* instruction. According to defendant, the trial judge's direction to "keep deliberating" failed to convey to jurors the unanimity and reexamination components that are also the duties of a juror. More importantly, the trial judge's direction failed to instruct jurors that a change of opinion should not occur solely because of the opinion of fellow jurors or for the mere purpose of returning a verdict. Notably, this court's decision in *McLaurin* did not address any argument considering the absence of a *Prim* instruction–another distinguishing factor in this case that the majority overlooks. See *McLaurin*, 235 Ill. 2d at 491-92.

I find defendant's contentions persuasive and agree with the appellate court's conclusion:

> "We find that Johnson has sustained his burden and established that the trial court's *ex parte* communication with the jury prejudiced him. Johnson's absence at this critical stage in the proceedings denied him direct knowledge of what was said and done in response to the jury's question and deprived him of the opportunity to make objections and take any actions necessary to secure his rights. The State speculates that the trial court would have refused a request by Johnson for a *Prim* instruction because of the short duration the jury had deliberated before sending its note and because the trial court failed to give the instruction at Johnson's first trial. The State also points out that Johnson never asked for a *Prim* instruction at his first trial and, based on the similarities between the first and second trials, no prejudice could be said to have resulted from the *ex parte* communication. The State's speculation is unpersuasive. Johnson was deprived of his right to be present when the jury note was presented and we cannot guess what response he may have had to it. Because the trial court's *ex parte* communication deprived Johnson of his constitutional right to be present at all critical stages of the proceedings against him, we reverse his conviction and

remand." *Johnson II*, 388 Ill. App. 3d at 203-04.

The jury in defendant's first trial deadlocked, prompting a mistrial. At defendant's second trial, the jury sent two notes, one of which stated that the members of the jury were deadlocked and one of which asked what punishment would be imposed on defendant. These notes clearly indicate that the jury had serious concerns about this case and were troubled about the ramifications of its decision. In these circumstances, the judge should have been particularly mindful of the need to protect defendant's right to be present.

In my view, the adversary process ceased to function in this case when the trial court failed to inform defendant or his attorney of the jury's notes, an event that may have significantly affected the ability of one member of the jury to act impartially and on his or her own accord to reach a decision. Given the importance of the rights involved and the facts presented in this case, I believe defendant has met his burden of showing that he suffered prejudice. I therefore dissent.

JUSTICE FREEMAN joins in this dissent.