2020 IL App (1st) 171792-U

No. 1-17-1792

Order filed March 3, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 7806 |
| | ) | |
| JOEY JONES, | ) | Honorable |
| | ) | Matthew E. Coghlan, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court did not commit reversible error by imposing sentence based on an improper sentencing factor, *i.e.*, the misapprehension that defendant was an adult when he committed two prior felonies.

¶ 2    Following a jury trial, defendant Joey Jones was found guilty of second degree murder (720 ILCS 5/9-2(a)(2) (West 2014)). The trial court sentenced defendant to 19 years in prison. On appeal, defendant contends that the trial court erred in imposing a near-maximum sentence based

on the misapprehension that he was an adult when he committed two of his prior felonies. For the reasons that follow, we affirm.

¶ 3     Defendant's conviction arose from the shooting death of Omar Maslat on April 1, 2014, in Chicago. Following his arrest, defendant was charged by indictment with 24 counts of first degree murder, five counts of armed robbery, and two counts of aggravated unlawful restraint. Prior to trial, the State nol-prossed all the counts except for three counts of first degree murder and one count of armed robbery.

¶ 4     At trial, Bahlal Abubakr testified that on the morning of April 1, 2014, he and Maslat were working at a convenience store. In court, Abubakr stated that he did not recall anything unusual happening that day. He also did not remember whether the police came to the store or whether he spoke with officers at a police station, although he agreed he viewed a lineup at some point and identified someone in it. During his testimony, he identified a photograph of the lineup and his signature on the photograph. When shown surveillance videos from the morning in question, Abubakr stated the footage "probably" depicted the store. He identified himself and Maslat on the videos, as well as a third person he said was "probably" a customer.

¶ 5     Abubakr acknowledged that he had testified before a grand jury. In that testimony, he related that about 6 a.m. on the day in question, he and Maslat were working in the store when a man came in and asked to see a t-shirt and hat that were on display behind the counter. Abubakr gave him the t-shirt and hat. The man, who had stated he had a gun on him and grabbed at his waist, put on the shirt and hat, took a Gatorade from a cooler, and asked for a pack of cigarettes. Abubakr told the man his items totaled $22. The man dug around in his pockets and came up with eight cents. Abubakr gave the man the coins back and told him to "stop playing" and pay the

money he owed. Abubakr also asked Maslat to close the security gate on the door. When Maslat started to do so, Abubakr heard a gunshot and then saw Maslat grabbing his chest. Abubakr came out from behind the counter. He saw Maslat lying on the floor with his hands covering his head and the man standing about two feet from Maslat, holding a gun in his hand. The man ordered Abubakr to go back behind the counter and get him a pack of cigarettes. The man took the cigarettes from Abubakr and left the store with the t-shirt, hat, and cigarettes.

¶ 6    The medical examiner who performed the autopsy on Maslat testified that he died as the result of a gunshot wound to the chest.

¶ 7    Chicago police detective Destry Wilborn testified that Abubakr identified defendant in a lineup as the person who shot Maslat.

¶ 8    In addition to witness testimony, the State introduced into evidence, under a stipulation, surveillance video recordings showing the shooting and surrounding events from multiple angles.

¶ 9    Defendant testified that around 6 a.m. on the morning in question, he stopped at the convenience store for a Gatorade and a pack of cigarettes. As he was talking to Abubakr about cigarettes, he noticed a t-shirt he liked behind the counter and asked to see it. Abubakr handed him the t-shirt, as well as a hat. When defendant told Abubakr that he wanted to get a Gatorade too, Abubakr told him to go get one, and that his total would be $22.75. As defendant was walking to the coolers in the back of the store, he heard someone "hollering" from the front of the store in a language that was not English. A man came out from the employee area of the back of the store and, in an aggressive tone, asked defendant what he was doing. When defendant said he was looking for Gatorade, the man said, "[Y]ou niggers is always stealing from my store." Defendant grabbed a Gatorade. The man kept talking to defendant and walked toward the front of the store.

Defendant went back to the counter and asked Abubakr if he could try on the shirt. Abubakr agreed, so defendant put on the shirt and hat and gave Abubakr $25.75. Rather than give him change, Abubakr stated that defendant owed $28 total. Defendant and Abubakr argued. Abubakr told the other man in the store to close the gate. Defendant said, "[D]on't lock me in this store."

¶ 10    At this point, Abubakr started to come out from behind the counter. Defendant testified that he was scared and did not know what to do. He stated, "So I upped my firearm and I shot him because I didn't know what they were going to do to me when he try to close the gate and he start running around the counter, turning around and hollering, I didn't know what they were going to do to me." Defendant explained that when the man had started moving toward the gate, he was scared for his life, and that when he shot, he was not aiming but was just trying to stop "them" from "trying to do something to me." When the man hit the ground and put his arms up, defendant told Abubakr that he did not want any problems. Defendant grabbed the cigarettes off the counter, told Abubakr to call an ambulance, and left.

¶ 11    The jury found defendant guilty of two counts of the lesser-included offense of second degree murder, and the trial court entered judgment on the verdict. Defendant filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied the motion.

¶ 12    At sentencing, defense counsel stated that he and defendant had reviewed the presentence investigation (PSI) report and there were no changes that needed to be made to it. In response, the trial court indicated, *sua sponte*, that it was changing the name of the charge in the instant case from "murder" to "second degree murder." The PSI report revealed that defendant had three prior felony convictions: (1) delivery of a controlled substance committed when he was 15; (2) delivery

of a controlled substance committed when he was 16; and (3) possession of a controlled substance (PCS) committed when he was 28.

¶ 13    The defense called defendant's mother and sister to testify in mitigation. In aggravation, the State reviewed the facts of the case and then made the following statements:

"By way of background, Judge, in reviewing the PSI, you can see this defendant started his criminal activity way back when he was a 12 year old. He started with adjudication of robbery and PCS. He then had a juvenile case, again, for possession of a controlled substance and that didn't stop. He then continued into his adulthood with felony delivery of a controlled substance conviction and that was in 1997 -- excuse me, 1998, and then he has a 1999 conviction for delivery of a controlled substance and a 2012 possession of a controlled substance. *** Judge, I would submit that based on his criminal history, based on the actions -- and you can see on that video his actions after he does the shooting, he doesn't appear to be afraid. He's pointing that gun around. He calmly walks out of that store. Judge, I would submit that he should be sentenced to the maximum sentence in this case, which is 20 years in the Illinois Department of Corrections."

Defense counsel argued in mitigation that defendant had a difficult upbringing, had no history of violence, had not been found by the jury to have had the intent to commit a violent crime, had conducted himself appropriately while incarcerated, and had been helpful to counsel in preparing for trial. Defense counsel also highlighted the cost to taxpayers associated with incarceration and suggested a 10-year sentence. In allocution, defendant apologized to Maslat's family.

¶ 14    The court announced sentence as follows:

"All right. Thank you. The Court has had the opportunity to review the presentence investigation, the defendant's criminal history, his social history, educational and employment background; rehabilitative potential, I've considered the facts of the case; I've consider[ed] all the factors in aggravation and mitigation.

The Court does find it aggravating that the defendant even was in possession of a weapon having begun his life of criminality at the tender age of 12 years old. He's got a robbery, which is a crime against another person. He's done time in the penitentiary as an adult. Even after he became a little bit older, he picked up another drug case in 2011, so he should -- you know, he had absolutely no right to be in possession of a weapon and to even consider then using it in his own defense where that -- is unjustified.

The Court has reviewed, of course, the tape -- the videotape. The victim in this matter was unarmed, he didn't do anything to deserve being shot by the defendant. What feels like a 10-year sentence would deprecate the seriousness of the offense.

After considering all the factors in aggravation and mitigation, judgment is entered on Count 9. The defendant is sentenced to 19 years in the Illinois Department of Corrections.

\*\*\*

Count 10 merges into Count 9."

¶ 15    Within 30 days of sentencing, defendant filed a motion to reconsider sentence, arguing that the sentence was not in keeping with his history, family situation, economic status, education, or occupational or personal habits, and was not in keeping with alternatives to assist in his rehabilitation. The trial court denied the motion, stating that sentencing was within its discretion

and that 19 years was an appropriate sentence "considering all the factors in aggravation and mitigation."

¶ 16    Later that day, defense counsel had the matter recalled and advised the trial court that the PSI report erroneously stated defendant pled guilty to a robbery in 1994, at age 12. Defendant told the trial court that in the 1994 case, he pled guilty to PCS but was found not guilty of the robbery. Counsel explained that "[t]he reason we raised this point as to the robbery is because my client wants to highlight that he did not have findings involving crimes of violence at the age of 12." Counsel posited that if the court took the 1994 robbery into consideration in fashioning a sentence, "then that piece of the finding is in error." The trial court thanked counsel for bringing the matter to its attention and stated:

> "Counsel, even assuming that the defendant was not found guilty or found delinquent based on a charge of robbery, the Court still feels that 19 years is an appropriate sentence. The defendant has several convictions, felony convictions as an adult, and he was not entitled to possess a firearm, let alone to use it, as he did in this case where he shot an unarmed man in the chest. So accepting your representation that robbery was not a robbery, I will strike that from the PSI. But it stands as a possession of a controlled substance. However, I still feel that the 19 years is an appropriate sentence, and your motion to reconsider sentence is denied."

Defendant filed a timely notice of appeal.

¶ 17    On appeal, defendant contends that the trial court erred in imposing a near-maximum sentence based on an improper sentencing factor, *i.e.*, the misapprehension that he was an adult when he committed two of his three prior felonies. Defendant argues that with the State's

prompting, the trial court fashioned its sentence based on this factual mistake, as evidenced by the trial court's statements that defendant had "done time in the penitentiary as an adult" prior to 2011 and that defendant had "several convictions, felony convictions as an adult." According to defendant's argument, the State's assertion that defendant's criminal conduct "continued into his adulthood" with the two delivery of a controlled substance offenses is flatly contradicted by the PSI report, which reveals that he committed those crimes at age 15 and age 16. Defendant asserts that where the trial court emphasized materially false facts both when imposing sentence and when denying the motion to reconsider, resentencing is warranted. He maintains that remand is especially important in this case because the trial court improperly converted a mitigating factor – his young age – into an aggravating factor and "turned the sentencing scheme on its head."

¶ 18    As an initial matter, we note that defendant has forfeited his claim because he did not raise it at sentencing or in his postsentencing motion. Nevertheless, defendant asserts that we may reach the issue (1) because forfeiture is less rigid where the basis for the objection is the trial judge's conduct, (2) under either prong of the plain error doctrine, or (3) where defense counsel was ineffective for failing to preserve the issue. Whether forfeiture may be avoided under any of these theories requires us to first determine whether reversible error occurred. See *People v. Johnson*, 238 Ill. 2d 478, 490-91 (2010) (excusing forfeiture based on the trial judge's conduct is warranted only when the trial court has overstepped its authority); *People v. Naylor*, 229 Ill. 2d 584, 602 (2008) (absent reversible error, there can be no plain error); *People v. Edwards*, 195 Ill. 2d 142, 165 (2001) ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection.").

¶ 19    "A sentence based on improper factors will not be affirmed unless the reviewing court can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008). Whether a court relied on an improper factor in imposing a sentence presents a question of law that we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. In considering whether reversible error occurred, a reviewing court should make its decision based on the record as a whole, rather than focus on a few words or statements of the trial court. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 37.

¶ 20    Contrary to defendant's position, we cannot find that the trial court was acting under the misapprehension that defendant committed all three of his prior felonies when he was an adult. To be sure, during the course of pronouncing sentence, the trial court stated that defendant had "done time in the penitentiary as an adult" prior to 2011, and, when denying the motion to reconsider sentence, stated that defendant had "several convictions, felony convictions as an adult." However, as the State points out in its brief, the trial court's statements were not necessarily inaccurate. Although defendant was 15 and 16 when he committed his two deliveries of a controlled substance, he was tried, convicted, and sentenced as an adult for both of those crimes. The PSI report lists these two offenses under the category "adult," rather than "juvenile," and reflects that in 1999, defendant was sentenced to seven years in prison for the second offense. As such, the trial court was not incorrect in stating that defendant had "done time in the penitentiary as an adult" prior to 2011 and that he had "several convictions, felony convictions as an adult."

¶ 21    Moreover, even if we were to find that the trial court's comments indicated it incorrectly believed defendant was chronologically an adult at the time he committed the two deliveries of a

controlled substance, we disagree with defendant's assertion that the trial court relied on his maturity, as opposed to youthfulness, at the time of those prior offenses in fashioning a sentence in the instant case. The trial court stated at sentencing that it had reviewed defendant's criminal history, social history, education, and employment background, and that it had considered the facts of the case, defendant's rehabilitative potential, and "all the factors in aggravation and mitigation." The court recited the details of defendant's criminal history, highlighted that it had reviewed the video footage of the shooting, and emphasized that where the victim was unarmed and did not "do anything to deserve being shot," a 10-year sentence would deprecate the seriousness of the offense. Later, when denying the motion to reconsider, the trial court reiterated that it believed a 19-year sentence was appropriate in light of defendant's history of multiple felony convictions and the fact that "he was not entitled to possess a firearm, let alone to use it, as he did in this case where he shot an unarmed man in the chest." In our view, the trial court's comments reveal that its main concern in fashioning a sentence was the facts of the case. While defendant's criminal history undoubtedly also played a part in the court's decision, we see nothing in the court's remarks indicating that it would have sentenced defendant differently based on how old he was at the time he committed his prior felonies.

¶ 22    Having considered the record of the sentencing hearing as a whole, we find that the trial court's references to "as an adult" were not incorrect and, in any event, defendant's age at the time he committed his prior felonies was, at best, a minimal part of the court's sentencing decision. To the extent that the trial court may have been mistaken as to defendant's age at the time he committed two of his three prior felonies, any weight placed on that finding was so insignificant that it did not lead to a greater sentence, and as such, there was no error. See *People v. Bourke*, 96

Ill. 2d 327, 333 (1983); *People v. Chromik*, 408 Ill. App. 3d 1028, 1050 (2011). In the absence of error, the issue remains forfeited. Defendant's contention fails.

¶ 23    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 24    Affirmed.