2024 IL App (1st) 230043-U

No. 1-23-0043

Order filed March 20, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 85 C 11489 |
| JOHNNY FREEMAN, | ) ) | Honorable Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE D. B. Walker delivered the judgment of the court.
Presiding Justice Reyes and Justice Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's sentence affirmed where the circuit court properly considered his youth and attendant characteristics when sentencing him to natural life in prison for a murder committed when defendant was 17 years old. Defendant cannot establish plain error or ineffective assistance of counsel.

¶ 2    The circuit court granted relief on defendant Johnny Freeman's successive postconviction petition and vacated his sentences. Following a new sentencing hearing, the court sentenced him to consecutive sentences of natural life in prison for murder, 30 years for aggravated criminal

sexual assault, and 15 years for aggravated kidnapping. On appeal, defendant contends that the imposition of a life sentence for a murder he committed at age 17 is unconstitutional because he is not permanently incapable of rehabilitation. Defendant further argues that, although this issue was forfeited for review, his sentence constitutes plain error and that counsel was ineffective for not preserving the issue. We affirm.

¶ 3                                           BACKGROUND

¶ 4      The record on appeal does not contain a complete report of proceedings from the pretrial, trial, and posttrial proceedings.[1] The evidence underlying the offenses has been gleaned from the common law record and this court's prior decisions.

¶ 5      Following a 1986 jury trial, defendant was found guilty of murder, aggravated kidnapping, aggravated criminal sexual assault, and criminal sexual assault. The offenses occurred on June 10, 1985, when defendant was 17 years old. As recited in this court's decision on direct appeal:

> "The evidence supporting the conviction established that defendant took the victim, a five-year-old female, from the fifth floor to a fourteenth floor apartment of the Henry Horner Homes in Chicago. After committing criminal sexual assault on the victim, he shoved the victim out of a window. When the victim grabbed the edge of the window and screamed for her mother, defendant shoved her a second time. The victim fell to the ground 14 floors below. She was pronounced dead at Cook County Hospital.

---

[1] The record reflects that during the course of the postconviction proceedings, the parties reconstituted the trial transcripts and provided a copy to the circuit court for purposes of the 2022 sentencing hearing. Although those transcripts are not included in the record on appeal, the report of proceedings from the July 24, 1986, sentencing hearing is attached to the State's motion to dismiss defendant's amended supplemental postconviction petition, which is included in the common law record.

Testimony of an eye witness, coupled with defendant's confession, are part of the overwhelming evidence of defendant's guilt." *People v. Freeman*, 182 Ill. App. 3d 731, 732-33 (1989).

¶ 6 The trial court merged the criminal sexual assault count into the aggravated criminal sexual assault count, and imposed consecutive sentences of life imprisonment without parole for murder, 60 years for aggravated criminal sexual assault, and 15 years for aggravated kidnapping.

¶ 7 Relevant here, we affirmed on direct appeal over defendant's challenges to his sentences. See *id.* Defendant then filed an unsuccessful collateral attack on his convictions. See *People v. Freeman*, No. 1-92-0710 (1992) (unpublished summary order under Supreme Court Rule 23).

¶ 8 In 2001, defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2000)), or, in the alternative, for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)), relying on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to challenge his "sentence."[2] On July 13, 2001, defendant's sentence for aggravated criminal sexual assault was reduced to 30 years, and the other sentences remained unchanged.

¶ 9 On July 3, 2013, defendant sought leave to file a *pro se* successive postconviction petition. The petition relied on *Miller v. Alabama*, 567 U.S. 460 (2012), to argue that a sentence of life in prison without parole for a juvenile offender constituted cruel and unusual punishment. The petition was docketed and postconviction counsel was appointed.

¶ 10 On August 31, 2017, postconviction counsel filed an amended successive postconviction petition raising the additional argument that discretionary life sentences imposed on juvenile

---

[2] Although the challenged sentence was not identified, the motion alleged that it was improperly "extended" beyond the "statutory limitations" of 20 to 40 years.

offenders were unconstitutional absent a showing of permanent incorrigibility. On May 30, 2019, counsel filed an amended supplemental postconviction petition alleging that defendant's sentence was "far in excess" of the *de facto* life sentence outlined by *People v. Buffer*, 2019 IL 122327. The State filed a motion to dismiss.

¶ 11    On October 29, 2019, the circuit court denied the State's motion to dismiss. The court determined that because defendant's original sentencing hearing did not comport with the requirements of *Miller*, a new sentencing hearing was warranted. The court thereafter granted the parties' agreed motion to vacate defendant's sentences, remanded defendant to the Cook County jail, and ordered a presentence investigation (PSI) report.

¶ 12    The PSI stated that defendant was born on September 7, 1967, and was raised in the Henry Horner Homes. When his parents divorced, his mother retained custody and he visited his father "almost" daily. Defendant reported a good childhood during which his parents provided for him and he was " 'whooped' " as punishment. He ran away from home a "few" times, but always returned the next day.

¶ 13    Defendant dropped out of high school after six months because it did not interest him. While in high school, he was suspended for fighting and saw a psychiatrist. Prior to his incarceration, defendant worked as a delivery man, and used alcohol and marijuana. Both of defendant's girlfriends were pregnant prior to his incarceration. He never met his children.

¶ 14    Defendant belonged to a street gang from ages 14 to 22, but he left when he matured. While in prison, defendant completed his GED, engaged in a religious studies program, and worked various jobs. According to the PSI, defendant denied committing the offense and did not realize that he signed a statement. Defendant admitted that he sometimes "lacks control for events" that

occur in his life, but stated that he was not the same person who entered prison 30 years prior and that he was calmer and "level headed."

¶ 15    On December 8, 2022, a sentencing hearing commenced.

¶ 16    Retired Chicago police officer William Jackson testified that on the evening of June 10, 1985, he responded to a call at the Henry Horner Homes on Lake Street in Chicago. There, he observed a child on the ground, twitching.

¶ 17    The State then read the victim impact statement of the victim's brother, who stated that the victim "kept a smile on her face," but was denied the chance to enjoy life.

¶ 18    The State argued in aggravation that serious harm was done to the five-year-old victim, who did not have the opportunity to "grow up." The State further argued that the victim was sexually assaulted and thrown out of a window, and that these actions were exceptionally brutal and heinous behavior indicative of wanton cruelty. The State also noted that, according to defendant's "court reported statement," defendant removed a plexiglass covering from a window in an apartment before bringing the victim there, sexually assaulting her vaginally and anally, and pushing her out of that window. The State further noted that defendant acted alone, and that he had no history of criminal activity.

¶ 19    Turning to the *Miller* factors, the State acknowledged that at the time of the offenses, defendant was three months "shy" of his 18th birthday. However, the State argued there was no specific evidence of defendant's impetuosity or maturity at the time of the offenses, and that this was not a crime of impulse when defendant "lured" the victim and then tried to "cover up" his actions. The State further asserted no evidence suggested that the offenses were motivated by peer pressure or a "dare," or that a terrible family and home environment led to the criminal activity.

The State concluded by noting that the victim caught herself on the window ledge and that defendant could have pulled her in, but he pushed her instead.

¶ 20    Postconviction counsel acknowledged that something "went wrong" when defendant was 17, and that nothing could bring the victim back, but asserted that the "juvenile mind" lacks the adult ability to "pull back *** from doing things." Counsel argued that defendant, who had been in prison for approximately 34 years, participated in education courses, tried to "better himself," and was "not the same person." The court then asked counsel whether defendant testified at trial that he was impetuous and impulsive in his behavior, and counsel acknowledged that defendant denied the offenses at trial.

¶ 21    On December 21, 2022, the circuit court continued the hearing. Defendant stated that he wanted to stand by his "original plea of innocence," but had been "gone 37 years," had no "intentions" of "doing anything" to come back to court, and asked for a chance to "live out" his life with his family.

¶ 22    In sentencing defendant, the court stated that it considered the evidence, the PSI, and *Miller* and other juvenile sentencing cases. The court noted that defendant was 17 years and 9 months old at the time of the offenses, and that the court therefore had to consider:

> "defendant's youthful attributes, his chronological age, *** any evidence of particular immaturity, impetuosity, any evidence of failure to appreciate risks and consequences, his family home environment, [and] the degree of his participation. This was an offense that was committed by one person and one person only. Any evidence of familial or peer pressure that may have affected him, there's no evidence of that. The juvenile [defendant's] *** competence, including his ability to deal with police officers,

prosecutors, and any incapacity he has to assist his attorneys, and the juvenile defendant's prospects for rehabilitation."

¶ 23    The court stated that it considered the "entirety" of a person, "not only his age, [and] level of maturity," and "sentence[d] a person as a whole person based on their background, their particular position," and education. The court noted, however, that some "acts committed by people regardless of age *** are truly evil" and that the "person that committed the offense in this particular case was truly evil." The court acknowledged that although defendant's statements were admitted at trial and a reviewing court found "overwhelming evidence" of his guilt, defendant was "entitled to *** say that he did not commit the offense." The court concluded that no evidence showed that defendant acted impetuously or because of his immaturity; rather, he lured a young girl with the promise of candy and then killed her after "raping her" for "self gratification." The court therefore imposed consecutive sentences of life in prison for murder, 30 years for aggravated criminal sexual assault, and 15 years for aggravated kidnapping. Defendant did not file a motion to reconsider sentence.

¶ 24                                    ANALYSIS

¶ 25    On appeal, defendant contends that his sentence of life in prison for murder is unconstitutional because he is not permanently incapable of rehabilitation. He acknowledges that he has forfeited this issue on appeal for failure to raise it in a postsentencing motion. See *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). However, he requests that this court review the issue pursuant to the plain error doctrine. In the alternative, defendant contends he was denied effective assistance by counsel's failure to preserve the issue.

¶ 26 The plain error doctrine permits a reviewing court to consider unpreserved error when (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 27 To demonstrate plain error in the sentencing context, a defendant must show that an error occurred and either (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious that it denied the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545. The first step in plain error review is to determine whether an error occurred. See *People v. Hood*, 2016 IL 118581, ¶ 18. A defendant bears the burden to establish plain error. *Thompson*, 238 Ill. 2d at 613. Whether plain error arose is a question of law reviewed *de novo*. *People v. Johnson*, 238 Ill. 2d 478, 485 (2010). Thus, we first consider whether there was a clear or obvious error.

¶ 28 Much has changed in juvenile sentencing since defendant was first sentenced in 1986. In *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the United States Supreme Court held that the eighth amendment forbids a sentencing scheme which results in a mandatory sentence of life in prison without parole for a juvenile offender. While the Court did not prohibit the imposition of life sentences on juvenile offenders, it held that such sentences must be based upon discretion in order to permit the consideration of the juvenile's chronological age and its "hallmark features," including "immaturity, impetuosity," and the "failure to appreciate risks and consequences"; the circumstances of the offense, including the extent of the juvenile's participation and whether family or peer pressure may have affected the juvenile; and the juvenile's individual circumstances, including family and home environment, rehabilitative potential, and whether the juvenile could meaningfully participate in the trial process. *Id*. at 477-78.

¶ 29 In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Court explained that *Miller* "requires a sentencer to consider a juvenile offender's youth and attendant characteristics before

determining that life without parole is a proportionate sentence." *Id*. at 209-10. A sentence of life in prison without parole is reserved for "the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible." *Id*. at 208.

¶ 30    Most recently, in *Jones v. Mississippi*, 593 U.S. 98 (2021), the Court rejected the argument that when imposing a discretionary sentence of life in prison without the possibility of parole on a juvenile, the sentencing court must make a separate finding that the juvenile is permanently incorrigible or "provide an on-the-record sentencing explanation with an 'implicit finding' of permanent incorrigibility." *Id*. at 100, 104-05. The Court explained that, while *Miller* "required that a sentencer consider youth as a mitigating factor when deciding whether to impose a life-without-parole sentence," it did not require "a separate finding of permanent incorrigibility" before the imposition of such a sentence. *Id*. at 109. The Court further determined that an on-the-record sentencing explanation was "not necessary to ensure that a sentencer considers a defendant's youth," because "if the sentencer has discretion to consider the defendant's youth, the sentencer necessarily *will* consider [it], especially if defense counsel advances an argument based on the defendant's youth." (Emphasis in original.) *Id*. at 114.

¶ 31    That is, "[t]he key assumption of both *Miller* and *Montgomery* was that discretionary sentencing allows the sentencer to consider the defendant's youth, and thereby helps ensure that life-without-parole sentences are imposed only in cases where that sentence is appropriate in light of the defendant's age." *Id*. at 111-12; see also *People v. Wilson*, 2023 IL 127666, ¶ 38 (*Jones* "held that neither a finding of permanent incorrigibility nor an on-the-record sentencing explanation is constitutionally required before a juvenile may be sentenced to life without parole"); *People v. Jones*, 2021 IL 126432, ¶ 28 ("*Miller*'s additional protections for juvenile offenders

apply only when a trial court lacks, or refuses to use, discretion in sentencing a juvenile offender to a life, or *de facto* life, sentence.").

¶ 32    Turning to the case at bar, defendant contends that the circuit court's sentence of life in prison was not supported by the evidence. Defendant asserts that he, like the "vast majority" of juvenile offenders, is capable of reforming as he ages, and notes that he completed his GED and participated in self-help programs while incarcerated. Thus, defendant asserts, he is not so "depraved" or "incorrigible" that such a sentence was appropriate.

¶ 33    Generally, we review a sentencing decision for an abuse of discretion. See, *e.g.*, *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). However, when the issue is whether the sentencing court misapprehended applicable law, our review is *de novo*. See, *e.g.*, *People v. Moore*, 207 Ill. 2d 68, 75 (2003).

¶ 34    To prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) he was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider his youth and its attendant characteristics when imposing sentence. *People v. Buffer*, 2019 IL 122327, ¶ 27. A sentencing court's failure to comply with *Miller* must be shown; it is never presumed. *People v. Chambers*, 2021 IL App (4th) 190151, ¶ 65.

¶ 35    Here, the applicable sentence for murder was a term of 20 to 40 years in prison. See Ill. Rev. Stat. ch. 38, ¶ 1005-8-1(a)(1) (1985). A sentence of life in prison could be imposed if the trial court found that "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" or that certain aggravating factors applied. See Ill. Rev. Stat. ch. 38, ¶ 1005-8-1(a)(1) (1985); Ill. Rev. Stat. ch. 38, ¶ 9-1(b)(6)(a)(ii)(c); (b)(7) (1985).

¶ 36    In the case at bar, defendant's 2022 resentencing took place under a sentencing scheme that gave the court the discretion to consider defendant's youth and attendant characteristics and to impose a sentence from 20 years to life in prison. See 730 ILCS 5/5-4.5-105 (West 2022); Ill. Rev. Stat. ch. 38, ¶ 1005-8-1(a)(1) (1985). The record reveals that the parties' arguments at sentencing focused on defendant's youth and that the court discussed the *Miller* factors when crafting defendant's sentence. At the 2022 resentencing hearing, counsel acknowledged that something "went wrong" when defendant was 17 years old, but asserted that the "juvenile mind" did not have the adult ability to "pull back" from actions and that defendant worked to better himself in prison. The State argued that defendant's actions were exceptionally brutal and heinous behavior indicative of wanton cruelty, asserted that defendant did not act impulsively, and addressed the *Miller* factors.

¶ 37    In sentencing defendant, the court stated that it considered, *inter alia*, the evidence, the PSI, and *Miller* and other juvenile sentencing cases. Moreover, as defendant was 17 years and 9 months old at the time of the offenses, the court considered his "youthful attributes," his age, any evidence of his immaturity or impetuosity, any evidence of his failure to appreciate risks and consequences, his family environment, his degree of participation in the offenses, his competence to deal with police officers, any incapacity he had to assist his attorneys, and his prospects for rehabilitation. The court noted that defendant alone committed the offenses and there was no evidence of familial or peer pressure that may have affected his actions. The court further stated that it considered the "entirety" of a person, including his age, maturity level, background, and education. The court also noted that the "person that committed the offense in this particular case was truly evil" and that no evidence showed that defendant acted impetuously or because of his

immaturity. Nonetheless, the seriousness of the offense is generally the most important factor to consider when imposing a sentence. See *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 113.

¶ 38    Thus, it is clear that the court did not, as a matter of law, refuse to consider defendant's youth. *Id.* ¶¶ 38-39, 44. Rather, the court specifically considered defendant's youth and the *Miller* factors in determining defendant's sentence. Defendant cannot, therefore, show that the court failed to comply with *Miller*. *Chambers*, 2021 IL App (4th) 190151, ¶ 65.

¶ 39    Accordingly, because the court considered defendant's youth and attendant characteristics before imposing a discretionary life sentence, defendant's sentence complied with *Miller*, even though the court ultimately found that his youth was "outweighed by other factors" or "an insufficient reason to support a lesser sentence under the facts of the case." See *Jones*, 593 U.S. at 115 n.7. As defendant has failed to establish error, there can be no plain error, and his procedural default of this claim must be honored. *Hood*, 2016 IL 118581, ¶ 18; see also *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 40    For the same reason, defendant's contention that he was denied effective assistance because counsel failed to challenge the natural life sentence in a postsentencing motion must fail. A defendant alleging ineffective assistance must prove prejudice, such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). As the sentencing hearing complied with *Miller*, defendant cannot demonstrate a reasonable probability that his sentence would have been different had counsel raised this issue in a postsentencing motion. See, *e.g.*, *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66 (counsel was not ineffective for failing to file a motion to reconsider sentence where

there was not a reasonable probability that the sentence would have been different had the motion been filed).

¶ 41 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 42 Affirmed.